FILED

2005 Sep-13  PM 12:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |
|---|---|
| **REBECCA COLLINS, individually and on behalf of others similarly situated,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **BENICE ADAMS, et al.,** ] | |
| ] | |
| **Opt-In Plaintiffs,** ] | **CIVIL ACTION NO.:** |
| ] | |
| **v.** ] | **CV-04-0553-VEH** |
| ] | |
| **FAMILY DOLLAR STORES, INC.** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER
## ON PLAINTIFF'S MOTION TO FACILITATE NOTICE AND
## <u>DEFENDANT'S MOTION TO DROP PARTIES</u>

This Equal Pay Act ("EPA") action is brought under § 216(b) of the Fair Labor Standards Act ("FLSA") by Rebecca Collins ("Collins") against Family Dollar Stores, Inc. ("Family Dollar") alleging that she and other female Family Dollar store managers were paid less than male store managers who performed jobs of equal skill, responsibility and effort under similar working conditions.  (Doc. No. 1, Cmpl. ¶ 1,5,6.)  Before the court is Collins's Motion To Facilitate Notice[1] (Doc. No. 5) and

---

[1] 29 U.S.C. § 216(b) authorizes employees to bring collective pay actions "in behalf of ... themselves and other employees similarly situated" who file notices of consents to join or opt-in to the suit.

Family Dollar's Motion To Drop Parties[2].  Collins seeks to send notice of the action to all female Family Dollar store managers nation-wide.  Family Dollar asserts that each store is a separate "establishment" and thus the purported opt-ins are not similarly situated to Collins and cannot join in this action.

After consideration of the parties' motions, briefs, and oral arguments, for the reasons set forth hereinafter, I **GRANT** the motion to certify an FLSA collective action.  The class notification shall be sent to all female Family Dollar store managers of stores in the same two districts as the stores where Collins was employed as a store manager.  Family Dollar's motion is **GRANTED** as to all purported opt-ins who do not meet the criteria specified in the class notification and **GRANTED**, without prejudice to the right of such opt-ins to refile corrected declarations, as to all purported opt-ins who do meet the criteria but whose consents are defective in that the swear to the "foregoing" when there is nothing "foregoing" in the declaration, or which are on a basis other than personal knowledge, and is otherwise **DENIED**.  I find that all of Family Dollar's objections to the language in Collins's proposed Notice are well taken.  Family Dollar's objections to the Consent form are over-ruled.

### Facts

Collins is a female former Family Dollar store manager who filed this action

---

[2]  Brought pursuant to Fed.R.Civ.P. Rule 21.

on March 16, 2004, on the basis that she and other female Family Dollar store managers were discriminated against in pay in violation of the Equal Pay Act. (Doc. No. 1, Cmpl. ¶ 1,5,6).

Collins and seven other putative opt-in plaintiffs filed detailed declarations with the court on September 30, 2004. In the statements, each plaintiff alleges (when applicable) her educational background, where she worked as a store manager, how she was hired, the basis for her knowledge that "[t]here were little or no differences [sic] in the job duties and responsibilities a Store Manager was responsible for performing from one store to another", the names of other Family Dollar stores to which she was transferred, who her District Managers were, what districts she worked in,[3] the interaction between the District Manager and the Regional Vice President on pay issues, the fact that payroll was handled from corporate headquarters, the fact that she did not set the store's budget, how she would hire and fire employees, that merchandise for the stores was selected by corporate headquarters, with input from the District Manager and the Regional Vice President, that merchandise was priced out of corporate headquarters, that she did not have discretion as to unloading merchandise, disciplining employees, customer complaints, the store's hours of

---

[3] Collins worked in two districts, District 53 of Region 4 and another store and district she could not specify.

operation, store dress code, what storage rentals could be used, what pest extermination and trash control services could be used, and what store supplies could be ordered.  They each also stated that they performed the same job as male store managers, used the same skill, effort and responsibility under similar working conditions as male store managers, and their belief that male store managers were paid more for the same job.

Family Dollar operates more than 5,200 discount retail stores in 43 states and the District of Columbia.  Family Dollar divides its operations into stores (over 5,200), Districts (300), Regions (19) and Divisions (5).  Each District covers several stores.  Family Dollar has approximately 67 stores in the Northern District of Alabama.  Each District Manager located within the Northern District of Alabama supervised 12 to 15 stores.  Family Dollar's evidence demonstrates that many policies are made at corporate headquarters, but that decisions regarding how to implement policies are, to a large extent, made by District Managers.  Specifically, initial hire salaries and pay raises for store managers are set by District Managers.

<u>Law</u>

This action is brought pursuant to the Equal Pay Act provisions, 29 U.S.C. § 206(d), of the Fair Labor Standards Act, which provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees

are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

*Id*.

Section 216(b), provides that:

[a]n action ⋯ may be maintained against any employer ⋯ in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id*.

<u>Analysis</u>

This court uses the "two-step" approach to § 216(b) certification adopted by several other courts.  First, I will determine whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, I will revisit the issue of certification.  Certification, if granted, will be conditional.

In making the initial decision regarding certification, I must consider whether certification will serve the purposes and putative benefits of a collective action under

§ 216. The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). I balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively. *Bayles v. American Medical Response of Colorado, Inc.,* 950 F.Supp. 1053, 1067 (D.Colo.1996).

The Eleventh Circuit has identified two areas on which the plaintiff bears the initial burden in a in a sex discrimination case brought under the EPA: substantial similarity and same establishment.

"Initially, the burden rests with the plaintiff to show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (quoting *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)).

The statute also imposes on the plaintiff a "geographic limitation." Those employees against whom plaintiff compares herself must work in

6

> the same 'establishment' as the claimant. *Brennan v. Goose Creek Consolidated Indep. Sch. Dist.,* 519 F.2d 53, 57 (5th Cir.1975). [A p]laintiff establishes a prima facie case by satisfying both the geographic and descriptive components of the test as applied to even one comparator. *Mitchell v. Jefferson County Bd. of Educ.,* 936 F.2d 539, 547 (11th Cir.1991); *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1009 (11th Cir.1989).

*Id*. Family Dollar contends that Collins has failed to establish either substantial similarity or same establishment. Family Dollar's argument regarding substantial similarity is based on its prevailing on its establishment argument. Therefore, I will focus on the "same establishment" issue first.

Collins has not proposed a conditional class definition. Her papers suggest the following definition: All female store managers who worked for Family Dollar who were paid less than male store managers for performing jobs of equal skill, responsibility, and effort under similar working conditions as such better paid male store managers.[4]

My decision to certify the class for notice, and the definition of that class, is based on my application of two 1994 Eleventh Circuit cases to the facts of this case, *Meeks v. Computer Associates International*, 15 F.3d 1013 (11th Cir. 1994) and *Mulhall v. Advance Security, Inc.*, 19 F.3d 586 (11th Cir. 194). In each of these cases,

---

[4] Family Dollar has identified arguments against certain aspects of the proposed class notice in the event that such notice is certified. I will deal with those arguments later in this opinion.

the Court applied the facts of the case to the statutory term, "establishment."  In each of these cases, the Court turned to the definition of that term as promulgated by regulations of the Secretary of Labor, specifically, as "a distinct physical place of business rather than ... an entire business or 'enterprise' which may include several separate places of business."  19 C.F.R. § 1620.9(a).  In each decision, the Court recognized that, under *Brennan v. Goose Creek Consolidated Indep. Sch. Dist.*, 519 F.2d 53 (5th Cir. 1975)[5], there are situations in which a single establishment can include operations at more than one physical location, although such situations are "unusual".

In the first[6] of those decisions, the Court held that the employer lacked "the degree of centralization necessary to justify treating all of the company's technical writers as working at a single establishment."  *Meeks*, 15 F.3d 1013, 1017.  The Court found the defendant's evidence of centralization insufficient in face of the fact that "the ultimate decision respecting the hiring of the two persons really in issue, male and female, ... was at the [local] level considering the [local] community and the office requirements."  *Id*.  That is, the Court was persuaded that, among all the factors it considered, the fact that "[the two j]ob applicants [at issue were] screened and

---

[5]  In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as bindng precedent those cases decided by the Fifth Circuit prior to October 1, 1981.

[6]  By a matter of weeks.

interviewed by local supervisors who then recommend[ed] the applicants and a suggested salary to the central personnel office, which [gave] final approval," was determinative. *Id*.

In *Mulhall*, the Court found that the plaintiff, who worked in the defendant corporation's main offices, worked in the same establishment as three project managers who worked at military sites in different locations. The Court found the following facts "dispositive": (1) the project managers "*reported to plaintiff*",[7] (2) the plaintiff "determined all cost items, wages and benefit levels",[8] and (3) when another company offered one of the project managers a job, the corporate defendant "immediately increased [his] salary ... and added benefits sufficient to keep him",[9] thus "further demonstrat[ing] defendants' control."[10] The Court then explained that it was the combination of "centralized control and the functional interrelationship between plaintiff and the" project managers that allowed "a reasonable trier of fact [to] infer that ... a single establishment existed for purposes of the EPA." *Id*.

As applied to the facts of this case, Collins has established *Meeks* and *Mulhall* centralized control at the district level. Although many aspects of Collins's job were

---

[7]  19 F.3d 586, 591 (emphasis in original).

[8]  *Id*.

[9]  *Id*.

[10]  *Id*. at 592.

determined at the corporate level, the decision which matters for purposes of this Equal Pay Act case, that is, what the store managers (Collins, the purported opt-ins, and the male store managers) were paid initially, and as raises, was determined by the District Manager, although subject to review of the Regional Vice-President.  Thus, the "functional relationship" which matters for purpose of this analysis was between the store managers and their respective District Managers[11].  All the stores under the supervision of Collins's District Manager are a single "establishment" for purposes of Collins's claims.[12]

I next turn to the question whether Collins has demonstrated that she is "similarly situated" to the purported opt-ins and to her proposed comparators, that is, male store managers located within Collins's district.

> In Equal Pay Act cases, we compare the jobs, not the individual employees holding those jobs. *Miranda,* 975 F.2d at 1533.  Only the "skills and qualifications actually needed to perform the jobs are considered."  *Id.*  Comparators' prior experience is not relevant to the "substantially similar" inquiry.  *Id.*  The examination also rests on primary, as opposed to incidental or insubstantial job duties.  *Id.*  Job titles are a factor for consideration, but are not dispositive.  *Id.*  The plaintiff need not prove that her job and those of the comparators are identical;  the test is one of substantiality, not entirety.  *Id.*  Nonetheless,

---

[11]  Indeed, Family Dollar concedes that "[a] DM [district manager] manages the Store Manager."  (Defendant's Memorandum on Establishment and Similarly Situated Issues, Doc. No. 124 at 4.)

[12]  Collins states that she worked in two districts.  Therefore, this conditional class certification is as to female store managers in each of these districts.

in EPA cases "[t]he standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir.1989).

*Mulhall*, 19 F.3d 586, 593.

All of Family Dollar's arguments that Collins is not similarly situated is premised upon its argument that each store is a separate establishment. (*See,* Defendant's Memorandum on Establishment and Similarly Situated Issues, Doc. No. 124 at 43-57.) As stated above, I have found that all of the Family Dollar stores within each of Collins's districts constituted an "establishment."

Family Dollar has correctly pointed out that Collins has the burden to show that she is similarly situated. "Initially, the burden rests with the plaintiff to show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (quoting *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)). Therefore, I have examined the affidavits and depositions of Collins and the purported opt-ins from this judicial district[13] filed in this case. I have also examined all of the evidentiary filings of Family Dollar. The evidence filed establishes, at least on a

---

[13] Family Dollar states that this court's judicial district contains 67 stores, with [approximately 4-5] District managers handling 12 to 15 stores each. See, Defendant's Memorandum on Establishment and Similarly Situated Issues, Doc. No. 124 at 4-5.)

*prima facie* basis, that Collins is similarly situated to the purported opt-ins and to the proposed comparators.  Collins has met her burden, as it exists at this stage of the litigation, that she is "similarly situated."

Family Dollar's Rule 21 motion to drop parties is similarly premised upon its argument that each store is a separate establishment and therefore no "similarly situated" opt-ins exist.  For the same reasons as stated as to the establishment issue, Family Dollar's Rule 21 motion is due to be denied as to female store managers who were in the same districts as Collins but granted as to female store manager opt-ins who did not work in either of Collins's districts[14].  Additionally, Family Dollar's motion will be granted as to any opt-in whose declaration was deficient as I noted in the October, 2004, hearing, without prejudice to the right of any otherwise appropriate opt-in to file a corrected declaration.

Accordingly, **IT IS ORDERED** that:

1.  Collins's motion to facilitate notice pursuant to 29 U.S.C. § 216(b) is **GRANTED** as modified herein.

2. The collective action, as defined herein, is certified for notice purposes only.

3.  The parties shall complete where necessary and file any objections to the

---

[14]  Evidence will be analyzed on a district level, that is, evidence as to one district where Collins was employed will not be relevant for purposes of Collins's claims as to her treatment in the other district where she was employed.

attached form of notice within 10 days from the date this Order enters.

4.  Family Dollar **SHALL PROVIDE** Collins with the names and last known physical addresses of all individuals in the putative FLSA collective action within 30 days from the date this Order enters.

5.  Family Dollar **SHALL PROVIDE NOTICE** by First Class Mail to all putative opt-in Plaintiffs; and

6.  Family Dollar's motion to drop parties is **GRANTED** in part and **DENIED** in part.

**DONE** and **ORDERED** this 13th day of September, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge