## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| REBECCA COLLINS,        ] | |
|                ] | |
|        Plaintiff,       ] | |
|                ] | **CIVIL ACTION NO.:** |
| v.                        ] | **7:04-CV-0553-VEH** |
|                ] | |
| FAMILY DOLLAR STORES, INC.,    ] | |
|                ] | |
|        Defendant.      ] | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

This Equal Pay Act ("EPA") action is brought under § 216(b) of the Fair Labor Standards Act ("FLSA") by Rebecca Collins ("Collins") against Family Dollar Stores, Inc. ("Family Dollar") alleging that she was paid less than male store managers who performed jobs of equal skill, responsibility and effort under similar working conditions. (Doc. #1 ¶¶ 1, 5-6). Pending before the court are Family Dollar's Motion for Summary Judgment as to Named Plaintiff Rebecca Collins (Doc. #229) (the "Collins Motion"), and Motion for Summary Judgment on the Issue of Wilfulness (Doc. #204) (the "Wilfulness Motion"), both of which were filed on October 31, 2006. As analyzed below, the court concludes that Family Dollar has not met its burden on summary judgment with respect to the Collins Motion. The court similarly concludes that summary judgment for Family Dollar on the Wilfulness Motion is due

to be denied.

## II.    PROCEDURAL HISTORY

Collins is a female former Family Dollar store manager who filed this action on March 16, 2004, on the basis that she and other female Family Dollar store managers were discriminated against in pay in violation of the Equal Pay Act.  (Doc. #1 ¶¶ 1, 5-6).  On September 13, 2005, the court ruled that the districts in which Collins worked were a single-establishment, and that, at least on a *prima facie* basis, Collins was similarly situated to the purported opt-in claimants.

Subsequently, on December 11, 2006, the court entered an order (Doc. #240), consistent with its Memorandum Opinion (Doc. #239), decertifying the conditional class created in this case.  As a result of this decision on decertification, the claims and issues remaining in this case are all limited to Collins.

## III.    BURDEN ON SUMMARY JUDGMENT

As the Eleventh Circuit has recently summarized the burden on summary judgment, including those instances in which an affirmative defense is in issue:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that

2

there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted). If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273 -74 (11th Cir. 2006).

## IV.   STATEMENT OF FACTS[1]

### A.   Collins's Employment History with Family Dollar

Family Dollar is a discount retail store chain specializing in low cost, basic merchandise for family and home needs.  AF No. A.1.1.[2]  Family Dollar operates

---

[1]If the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Accordingly, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]The designation "AF" stands for admitted fact and indicates a fact offered by Family Dollar that Collins has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Collins has adequately disputed a fact offered by Family Dollar, the court has accepted Collins's version. The court's numbering of admitted facts (*e.g.*, AF No. A.2) corresponds to the numbering of Family Dollar's Statement of Facts as set forth in Doc. #230 and responded to by Collins in Doc. #243.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. A.3.2) would indicate

3

approximately 6,523 stores in 44 states and the District of Columbia throughout the United States.  AF No. A.1.2.

Collins was a Family Dollar employee from April 30, 2001 to August 24, 2002, at which time she resigned.  AF No. A.2.  Family Dollar initially hired Collins as a store manager trainee at Store 3812, in Tuscaloosa, Alabama.  AF No. A.3.1.  Collins, however, never actually worked or trained at Store 3812.  AF No. A.3.2.

Instead, Collins's district manager, Peggy Stotts ("Stotts"), immediately assigned her to a vacant store manager position at Store 945, located in Midfield, Alabama.  AF No. A.4.1.  Stotts did this because the store manager then temporarily overseeing Store 945, Sheila Dates ("Dates"), needed to focus on managing her own store.  AF No. A.4.2.  As a result, Family Dollar asked Collins to manage Store 945 on a temporary basis during her training period until Stotts could find a permanent replacement.  AF No. A.4.3.

Because Collins was still training as a store manager when Stotts first assigned her to Store 945, Stotts assigned two other store managers to assist Collins for a week

---

the second sentence of paragraph A.3 of Family Dollar's Statement of Facts is the subject of the court's citation to the record.  Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Collins's Statement of Facts contained in Doc. #243 and responded to by Family Dollar in Doc. #250.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

at the beginning and for inventory: Felicia Coleman ("Coleman") and Myra Lecroy ("Lecroy"). AF No. A.5. Stotts told Collins to call either Coleman or Lecroy any time she needed additional help at the store or had questions about the position. AF No. A.6.1. Also, because Collins was new and had not been fully trained before taking on Store 945, she was told to contact store manager Ronald "Brian" Reed ("Reed") to assist her when she did not have an assistant manager. AF No. A.6.2.

Collins remained as Store 945's store manager until she resigned on August 24, 2002. AF No. A.7.

### B.    Establishing Wages for Family Dollar Store Managers

The district manager, in conjunction with the regional vice president, is the Family Dollar management official responsible for hiring store managers and otherwise filling vacant store manager positions for stores in their particular district. AF No. B.1.1. Consequently, the district manager sets and manages all store manager pay. AF No. B.1.2.

At all times relevant to this lawsuit, Family Dollar has maintained no written policies, procedures or guidelines which govern the setting of store manager pay. AF No. B.2.1. Instead, Family Dollar leaves pay decisions with respect to store managers to the district manager's discretion. AF No. B.2.2.

When setting store manager pay, Family Dollar district managers generally

5

consider (but may also disregard) some or all of the following factors:  prior salary; experience; education; and the particular characteristics of the store to which that individual will be assigned to manage (*e.g.*, risk class, location, size and sales volume).  AF No. B.3.   Although district managers generally consider the same set of factors, what he or she considers under each factor may vary, as does the weight afforded to each.  AF No. B.4.1.   It is within the discretion of the district manager to weigh each factor as he or she sees fit.  AF No. B.4.2.

When setting store manager pay,  Stotts's practice is not to pay that person less than what his or her previous employer paid.  AF No. B.5.1.  She also tends to pay more for proven management experience (i.e., where the candidate's work history shows that he or she has held a significant management role).  AF No. B.5.2.  She does not necessarily look for retail sales management experience.  AF No. B.5.3.  She will, however, offer a candidate with documented retail sales management experience a higher starting salary.  AF No. B.5.4.

Stotts will also pay more to those candidates who possess specific skills that she believes fit the distinct needs of a particular store.  AF No. B.6.1.  For example, Stotts may pay a candidate more who has a loss prevention or law enforcement background if the store for which she is hiring is one with loss prevention issues.  AF No. B.6.2.

6

Stotts also considers the risk class of the store for which she is hiring/promoting a store manager when setting store manager pay.  AF No. B.7.1. She pays particular attention to the factors which led to the store's risk class assignment (*i.e.*, the level of crime in the store's neighborhood and that which the store has internally experienced).  AF No. B.7.2.  She tends to pay more to those store managers placed in higher risk class stores.  AF No. B.7.3.

Stotts also considers whether the store for which she is hiring a store manager has a history of high staff turnover; whether its previous manager(s) poorly managed it; and/or whether it has a high shrink history.  AF No. B.8.1.  It is Stotts's practice to pay more to store managers assigned to manage stores that pose such extra challenges.  AF No. B.8.2.

With regard to store location, it is Stotts's experience that a store located in an urban area is more difficult to staff than a rural area with a lower risk class.  AF No. B.9.1.  Stotts typically pays a store manager who is willing to manage a store located in an urban area more because of these added difficulties.  AF No. B.9.2.

Stotts also generally pays more to store managers who run larger stores.  AF No. B.10.1.  Whether Stotts considers a particular store "small," "medium" or "large," is primarily dependent on the store's sales volume.  AF No. B.10.2.  Stotts defines a small volume store in her district as one whose annual sales total is at or below

$499,999; a medium volume store is one whose annual sales total between $500,000 and $800,000; a large volume store has annual sales total in excess of $800,000. AF No. B.10.3.

Thus, when Stotts factors into her starting salary determination the sales volume of the store for which she is hiring/promoting a store manager, it is her practice to pay the candidate more the larger the store's volume. AF No. B.11.1. A larger volume store necessarily means it carries more merchandise, which necessarily means that the store will have a larger staff whom the candidate will have to manage. AF No. B.11.2. A larger volume store also necessarily means more customers, which may justify additional compensation. AF No. B.11.3.

## C.    Collins's Prior Work History

Before working at Family Dollar, Collins had been an assistant manager at Fred's Dollar Store, a cash office worker at Zayre, a store manager at Shoe City, and a waitress. AF No. C.1.1; AAF No. A.1.[3]  As an assistant store manager at Fred's Dollar Store, Collins was working for a Family Dollar competitor. AF No. C.1.2. At Fred's Dollar Store, Collins earned $8.50/hour, or $340/week, assuming a forty-hour work week. AF No. C.2.

───────────────

[3]Stotts indicated in her deposition that she was unaware of Collins's management experience at Shoe City and her work as a waitress when she set her pay. (Doc. #150 at Ex. A at 160).

### D.    Collins's Starting Salary at Family Dollar

As noted earlier, Collins began managing Store 945 while still a manager trainee.  AF No. D.1.1. While a manager trainee, Collins did not receive a salary; she earned $9.00/hour.  AF No. D.1.2.  She did not become a salaried store manager until June 17, 2001, after she finished manager training.  AF No. D.1.3.

Stotts set Collins's initial store manager salary at $2166.57/month, or $500/week.  AF No. D.2.1.  At this time, Family Dollar still needed Collins to manage Store 945.  AF No. D.2.2.  At the time she became a salaried employee, therefore, Collins was still temporarily assigned as Store 945's store manager.  AF No. D.2.3.

In setting Collins's starting store manager salary, Stotts considered Collins's previous work experience.  AF No. D.4.1. Stotts determined that Collins did not have proven management experience.  AF No. D.4.2.[4]  The lack of proven management experience played a significant role in Stotts's determination of  Collins's starting salary.  AF No. D.4.4.

Stotts also knew that Collins earned $8.50/hour, or $340/week with Fred's Dollar Store.  AF No. D.5.1.  Because it is her practice to remain competitive with an

---

[4]The court recognizes that Collins disputes Stotts's characterization of her prior work experience (Doc. #243 at 8 ¶ 26), but this does not create a material factual dispute as to what Stotts's  stated belief or assessment of Collins's work history in terms of proven management was.

individual's former employer in terms of salary, Stotts wanted to offer Collins a starting salary in excess of $340/week.  AF No. D.5.2.

### E.    Collins's Salary at Store 945

As previously noted, Stotts set Collins's starting store manager salary at $2166.67, or $500/week.  AF No. E.1.1.  On June 23, 2002, in accordance with Stotts's promise to Collins, Family Dollar increased  Collins pay to $2340/month, or $540/week. AF No. E.1.2.  Collins earned this increase as a result of a positive yearly inventory.  AF No. E.1.3.  Collins's pay remained at $540/week until she resigned from Family Dollar's employment on August 24, 2002.  AF No. E.2.

### F.    Store 945's History

At the time Collins began managing Store 945 (*i.e.*, April  2001), Store 945 (located in Midfield, Alabama) was in District 56.  AF No. F.1.1.  In January 2002, Family Dollar realigned certain districts, resulting in Store 945 being transferred to District 53. AF No. F.1.2.  Thus, while Collins was store manager at Store 945, Store 945 was in District 56 and later in District 53.  AF No. F.2.

Store 945 has a risk class of 3.  AAF No. 26.  Store 945's annual sales for 2000-2004 were, with the exception of 2004, all in excess of one million dollars: $1,044,201.00 for 2000; $1,029,305.00 for 2001; $1,024,839.00 for 2002; $1,006,288 for 2003; and $980,490.00.  AAF No. B.28.

### G.    Comparators Offered by Collins

Collins has identified Reed as a male store manager Family Dollar paid more than her.  AF No.  G.1.  On July 10, 2000, Family Dollar hired Reed as a manager trainee at Store 415.  AF No. G.2.1.  On August 13, 2000, Family Dollar promoted Reed to store manager at Store 4053.  AF No. G.2.2.  He remained in that position until November 4, 2000.  AF No. G.2.3.

At the time of Reed's promotion, Store 4053 was in District 53 under Jim Papp's ("Papp")  management.  AF No. G.3.1.   As District 53's district manager, Papp set Reed's starting pay as store manager at Store 4053.   AF No. G.3.2. Specifically, Papp set his pay at $2383.33/month, or $550/week.  AF No. G.3.3.

In Stotts's opinion, Reed came to Family Dollar with extensive "big box" retail store management experience.  AF No. G.4.  On November 5, 2000, Family Dollar transferred Reed to manage Store 4485. AF No. G.5.   Reed remained store manager at Store 4485 until November 12, 2001.   AF No. G.6.

On November 13, 2001, Family Dollar again transferred Reed, this time to Store 1634, in Bessemer, Alabama, where he remained until February 8, 2003.  AF No. G.7.  Stotts was Reed's district manager while he managed Store 1634.  AF No. G.8.

A second comparator offered by Collins is Charles Tidwell ("Tidwell") (Doc. #243 at 17), who managed Store 945 prior to Sheila Dates ("Dates"), who managed

11

the location immediately before Collins.  AAF No. B.29.  Tidwell earned $600.00 per week as 945's store manager from June 2000 through January 2001.  AAF No. B.30.

A third comparator offered by Collins is Steve Davis ("Davis") (Doc. #243 at 18), who managed Store 945 immediately after Collins's departure.  AAF No. B.31. Davis earned a salary of $825.00 per week as Store 945's manager.  AAF No. B.33.

A fourth comparator offered by Collins is Herman Robinson ("Robinson"), who worked at Store 945 after Davis and was compensated at a rate of $700.00 per week.  AAF No. B.33.  Therefore, every comparator offered by Collins received a higher weekly salary than she did for managing Store 945:  $500.00 or $540.00 per week for Collins versus $550.00 for Reed; $600.00 for Tidwell; $825.00 for Davis; and $700.00 for Robinson.

## V.___ANALYSIS

### A.    Relevant FLSA Provision and Applicable Case Law

Section 206(d) of the FLSA provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d).

In order to prevail on her EPA claim, Collins must first establish a *prima facie* case. Accordingly and as set forth by Family Dollar, she must demonstrate: (1) that Family Dollar paid higher wages to male store managers than to her, as a female; (2) that she and the male store managers performed equal work on jobs that required equal skill, effort, and responsibility; and (3) that she and the male store managers performed their jobs under similar working conditions. *See Corning Glass Works v. Brennan*, 417 U.S. 188 (1974); *see also Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). As summarized then, to show a *prima facie* case, Collins must locate "a male comparator who worked in the same establishment and who performed the same work as she did, yet received higher pay." *See* Doc. #230 at 16-17 (citing *Irby*, 44 F.3d at 954; *Butler v. Albany Int'l*, 273 F. Supp. 2d 1278, 1288 (M.D. Ala.), *aff'd*, 2004 U.S. App. LEXIS 20014 (11th Cir. May 11, 2004)).

Upon establishing an EPA *prima facie* case, the burden shifts to Family Dollar to demonstrate one (1) of the four (4) affirmative defenses as a justifiable reason for a pay differential. *Irby*, 44 F.3d at 954. As explained by the United State Supreme Court:

> [T]he burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions. All of the many lower courts that have considered this question have so held, and this view is consistent with the general rule that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on

which the employer has the burden of proof.

*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (footnotes omitted).

"The burden is a 'heavy one,' because the 'defendants must show that the factor of sex provided no basis for the wage differential[.]'" *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal and other citations omitted). Moreover, "[i]f the defendant fails to meet this burden, the court must enter judgment for the plaintiff." *Id.* (quoting *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1533 (11th Cir.1992)).

In this case, Family Dollar is relying upon the "any factor other than sex" defense. (Doc. #230 at 17). Considerations applicable to the "other than sex" defense include "factors such as the 'unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business.'" *Steger v. GE*, 318 F.3d 1066, 1078 (11th Cir. 2003) (citation omitted).

In describing the defendant's burden under the EPA, a district court has clarified the differences between a claim under the EPA versus one under Title VII:

> [O]nce an EPA plaintiff has established a *prima facie* case, the burden of persuasion shifts to the defendant to prove an affirmative defense-that the pay differential was "premised on a factor other than sex." *See Sprague*, 129 F.3d at 1364 (citing *Tidwell*, 989 F.2d at 409). In other words, defendant's burden with respect to plaintiff's EPA claim-the burden of ultimate persuasion-differs significantly from its burden with respect to plaintiff's Title VII claim. Because defendant bears the burden of proof at trial on its affirmative defense, it may only prevail at the summary judgment stage if it proves its affirmative defense "so

14

clearly that no rational jury could find to the contrary." *See Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3rd Cir.2000).  Moreover, in proving its affirmative defense, defendant must submit evidence from which a reasonable jury could conclude "not merely that [defendant's] proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *See id.* at 107-08 (emphasis in original).

*E.E.O.C. v. Swift Transp. Co., Inc.*, 120 F. Supp. 2d 982, 986 (D. Kan. 2000).

"When the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential.  [Moreover,] [i]f  [the] plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954 (internal citations omitted); *see also  Steger*, 318 F.3d at 1078 (indicating that once an employer's burden is met, then the burden shifts back to the plaintiff to rebut the defense).

"To rebut an employer's legitimate nondiscriminatory reasons for its adverse action, the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason. Any believable evidence which demonstrates a genuine issue of fact regarding the truth of the employer's explanation may sustain the employee's burden of proof." *Steger*, 318 F.3d at 1079 (internal and other citations omitted).  Finally, "an employer seeking summary judgment on an Equal Pay Act claim must present sufficient evidence such that no rational jury could conclude but that the proffered reasons

actually motivated the wage disparity of which the plaintiff complains." *See Swift*

*Transp.*, 120 F. Supp. 2d at 986 (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 108 (3d

Cir. 2000).

### B.      Preliminary Considerations on Summary Judgment

Family Dollar challenges Collins's case on two preliminary grounds.  One,

Family Dollar argues that because Stotts and Collins are both females, Collins's case

is "glaring[ly] flaw[ed]."  (Doc. #230 at 15). Two, Family Dollar contends that by

identifying only one comparator, Collins lacks sufficient evidence to substantiate her

case.   As discussed below, neither contention is valid.   Accordingly, summary

judgment in favor of Family Dollar is not appropriate based upon either one of these

grounds.  Moreover,  the court finds that Collins has demonstrated adequate *prima*

*facie* evidence of an EPA violation.

### 1.      The female gender of Stotts does not bar Collins's EPA claim as a matter of law.

In support of its first argument, Family Dollar cites to two (2) non-binding

decisions:  *Blount v. Ala. Coop Extension Servs.*, 869 F. Supp. 1543, 1554 n.3 (M.D.

Ala. 1994) ("The court finds this argument persuasive considering that Dr. Thompson

is a female and that she was the primary decisionmaker in the selection of the DAs

and in how their salary should be adjusted.  As a female, it seems unlikely that Dr.

Thompson would have a bias to discriminate against another woman in the

establishment of her salary.").  In the text of the opinion to which this footnote

relates, however, the district court explains:

> Dr. Thompson concedes that all DA positions are essentially identical, and that Dr. Blount is paid less than six males. Under the Equal Pay Act, Blount can state a *prima facie* case against Dr. William W. Curtis, Dr. Paul Waddy, Mr. Edward J. Coats, Mr. James O. Conway, and Mr. Lawrence S. Hawsey.  ACES and Dr. Thompson submit that the difference in salary is not due to sex discrimination, but due to length and history of employment.

*Id.*, 869 F. Supp. at 1554 (footnote omitted).  Therefore, the same gender of the

decisionmaker did not create an automatic bar to the plaintiff's EPA claim, but rather,

in the court's view, lent credibility to the "other than sex" factors offered by the

employer:  "length and history of employment."  *Id.*

The second case upon which Family Dollar relies is *Green v. Sosaya*, 420 F.3d

1189, 1195-96 (10th Cir. 2005) ("After reviewing the record in this case, we find no

merit to Ms. Green's contention.   To begin, Ms. Green was evaluated and

reprimanded by another woman, Ms. Sosaya.  Ms. Sosaya is a member of the same

protected class-women-as Ms. Green.").

However in apparent conflict with the Tenth Circuit, the Eleventh Circuit, in

*Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (addressing

same actor defense), has made it clear that inferences, such as these (*i.e.*, same actor

or same gender ones), are for the jury to draw:

Based on our consistent precedent, as articulated in *Combs*, we conclude

that "same actor" evidence of the sort introduced in this instance constitutes evidence that a jury may consider in deciding the ultimate issue of intentional discrimination. Evidence that the same actor both hired and fired the plaintiff, in some circumstances, may help to convince a jury that the defendant's proffered legitimate reasons for its decision are worthy of belief; it is the province of the jury rather than the court, however, to determine whether the inference generated by "same actor" evidence is strong enough to outweigh a plaintiff's evidence of pretext.

*Williams*, 144 F.3d at 1443.

Additionally, under the EPA, "[t]he plaintiff is not required to prove intentional discrimination, just that the employer pays unequal wages for equal work, as defined in the Act." *See Mitchell*, 936 F.2d at 547. Therefore, the discriminatory intent *vel non* of Stotts in paying store managers is not the critical inquiry for this court as it would normally be in a Title VII case, making the conventional belief that she would be unlikely to discriminate against those employees who share her same gender less meaningful (and perhaps meaningless) in an EPA case. Accordingly, in light of the above and consistent with the Eleventh Circuit's reasoning in *Williams*, the same gender of Stotts does not affect the court's analysis on summary judgment.

  **2.**   **Similarly, the existence of only a sole comparator does not bar Collins's EPA claim as a matter of law.**

The second preliminary issue raised by Family Dollar is whether the existence of only one comparator is sufficient to satisfy a *prima facie* EPA case. (Doc. #230 at 18 at 4). The court views this argument as one which goes to the relative strength

18

or weight (as opposed to the legal merits) of Collins's EPA claim.

Moreover, the Eleventh Circuit has made it clear that the existence of only one (1) comparator is sufficient under the EPA. *See Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991) ("To establish a[n] [EPA] *prima facie* case an employee 'need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex.'") (quoting *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1009 (11th Cir. 1989)).

### 3.   Collins has established a *prima facie* case under the EPA.

Therefore, the court has disposed of Family Dollar's initial challenges on summary judgment and has satisfied itself that Collins has established a *prima facie* claim under the EPA.[5]  Accordingly, the court now proceeds with analyzing Family Dollar's "other than sex" defense and Collins's related rebuttal arguments.

### B.   Family Dollar has not established its affirmative defense as a matter of law, or alternatively, Collins has established sufficient evidence of pretext with respect to Family Dollar's "other than sex" factors.

### 1.   Family Dollar's "Other Than Sex" Factors

Family Dollar offers four (4) factors to justify Collins's pay differential:  (1)

---

[5]Family Dollar has not defended on the grounds that the store manager position involves differing skill, effort, and responsibility, depending upon location or other circumstances.

her prior salary; (2) her work experience; (3) the temporary nature of her store assignment; and (4) her co-manager status when Family Dollar initially promoted her to the store manager position.  (Doc. #230 at 3).

## 2.    Analysis of Family Dollar's Affirmative Defense and Collins's Efforts to Show Pretext

### a.    Prior salary factor

Turning to the prior salary factor, the Eleventh Circuit has clarified that "prior salary alone cannot justify pay disparity."  *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) (footnote omitted).  Therefore, this factor by itself does not affirmatively establish Family Dollar's "other than sex" defense.

Moreover, while Stotts does indicate that Tidwell's prior compensation was at least part of her reasoning in setting his pay at $600.00 a week to manage Store 945, she does not ever indicate that she had knowledge of that amount.[6]   Instead she generally indicates that she was "aware that Mr. Tidwell was well-paid as the grocery

---

[6]Tidwell is Collins's most closely connected comparator because Stotts set the starting salaries for both of them at Store 945.  Because the court determines that summary judgment is due to be denied in reliance upon Tidwell as a comparator, it does not reach Family Dollar's argument that it would be inappropriate for the court to also consider Family Dollar's treatment of Reed, Davis, or Robinson as comparative evidence.  However, the court does note the Eleventh Circuit's holding in *Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001), which rejected the "proposition that whenever two different supervisors are involved in administering the disciplinary actions, the comparators cannot as a matter of law be similarly situated for Title VII purposes."  However, the application of *Anderson* to the EPA, or more specifically to this particular case, is left for another day.

store's Manager" without defining well-paid or establishing a threshold salary level relevant to her decisionmaking in setting Tidwell's pay.  (Doc. #250 Ex. M ¶ 2). Therefore, reasonable minds could differ on the effect that prior pay had relative to the salaries of Tidwell and Collins at Family Dollar.

### b.    Work experience factor

Family Dollar also defends its lower salary setting for Collins on the basis of her lack of relevant job experience.  The problem with Family Dollar's use of this factor to explain the pay differential is that Collins has created a material factual dispute as to whether her experience level was so inferior that a pay differential on that basis is believable.

For example, Stotts has indicated that she knew "Mr. Tidwell had managed a good-sized grocery store business for at least three years and had previously managed a Big Lots store."  Collins, on the other hand, had been an assistant manager at Fred's Dollar Store, a cash office worker at Zayre, and a store manager at Shoe City. Moreover, Fred's Dollar Store is a competitor of Family Dollar.  Accordingly, Collins had documented retail sales management experience (*see* AF No. B.5.4), including time spent at a competitor's store.  Therefore, a comparison of Tidwell's and Collins's records does not objectively demonstrate any dramatic differences in their respective employment histories.

Indeed, unlike Reed, who Stotts has noted had "big box" experience,[7] Stotts draws no such distinction as to Tidwell and, objectively, the variances in work experience between Tidwell and Collins are minimal, at best.  Accordingly, the court believes that reasonable minds could disagree over whether prior work experience explains Family Dollar's less favorable treatment of Collins in terms of setting her pay.

### c.      Temporary assignment

Similar problems exist with Family Dollar's two remaining explanations. While a temporary assignment might theoretically explain a pay differential, reasonable minds could differ as to whether Collins's duration of employment as a manager at Store 945, which lasted approximately one (1) year, amounts to an extension past a reasonable temporary assignment status.  Otherwise, a label of temporary assignment could be used perpetually to justify a pay differential that would not otherwise be legal when performing the same job under similar working conditions.

### d.      Co-manager status

Finally, reasonable minds could differ on Family Dollar's classification or characterization of Collins's role as a co-manager.  For example, Collins has offered

---

[7]*See* Doc. #230 at Ex. A ¶ 50.

evidence to support the limited nature of the roles that other managers played at Store 945.  For example, Collins called upon other managers to ask questions or if she had any problems (AAF No. A.13.), and other managers assisted Collins with inventory or when there was not an Assistant Manager in the store.  AAF No. A.15. Also, and as acknowledged by Family Dollar, many of the times in which Collins received manager assistance occurred during the beginning of her time at Store 945, when she was still in training.[8]

Moreover, Family Dollar has not pointed to any corroborating employment record indicating that Collins was merely a co-manager; instead, all the documentation that the court reviewed indicated that Collins was the store manager for Store 945.  Furthermore, after her initial time at Store 945 in which Family Dollar characterizes her as being a co-manager, Collins received a raise from $500.00 per week to $540.00.  However, even with this increase, her salary still fell below Tidwell's starting pay at $600.00 per week.  Therefore, a reasonable jury could disbelieve Family Dollar's explanation that because Collins operated as a co-manager, Collins's pay was set lower than Tidwell's.

### e.    Other evidence of pretext

Other pieces of evidence that bring into question Family Dollar's treatment of

---

[8]*See, e.g.*, AF No. A.5.

Collins include the fact that Stotts based her setting of Tidwell's salary at Store 945 in part upon its large volume status and its location in a crime-ridden area with a risk class rating of three.   (Doc. #250 at Ex. M ¶ 3).   However, these same objective factors of size and risk existed when Collins was assigned to Store 945 after Tidwell's employment there ended.   Moreover, Family Dollar's reliance upon the reasons that Collins was on a temporary assignment or only a co-manager to also explain why Store 945's volume and risk classification were not relevant to her pay are similarly insufficient as a matter of law as explained above.   Therefore,  reasonable minds could differ as to the explanations behind the differences between the starting salaries of Collins and Tidwell. More specifically, the court concludes that Family Dollar has not affirmatively shown with the evidence "that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which [Collins] complains." *See Swift Transp*., 120 F. Supp. 2d at 988.  Alternatively, Collins has adduced sufficient evidence showing that Family Dollar's explanations are pretextual or offered as a post-event justification for a gender-based differential. *See  Irby*, 44 F.3d at 954, *supra*.  Accordingly, Family Dollar's  Collins Motion is due to be denied.

### C.    Family Dollar's Wilfulness Motion

Similar to the district court's reasoning in  *Swift Transp*., 120 F. Supp. at 988, as Collins has survived summary judgment, this court believes that ruling on the wilfulness issue is premature and better left for consideration upon an appropriately

24

filed motion under Rule 50.  Accordingly, Family Dollar's Wilfulness Motion is also due to be denied.

## VI.   CONCLUSION

For the reasons explained above, material issues of disputed fact preclude the entry of summary judgment in favor of Family Dollar on both the Collins Motion and the Wilfulness Motion.   The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 6th day of March, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge